Nathan Fleischer v. Commissioner.
Fleischer v. Commissioner
Docket Nos. 2828-65, 4465-66.
United States Tax Court
T.C. Memo 1967-85; 1967 Tax Ct. Memo LEXIS 175; 26 T.C.M. (CCH) 422; T.C.M. (RIA) 67085; April 21, 1967
Nathan Fleischer, pro se, Grossinger Hotel, Grossinger, N. Y. Lawrence Shongut and Jay J. Lander, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: In these consolidated cases respondent determined deficiencies in petitioner's income tax for the years 1961, 1962 and 1963 in the respective amounts of $599.36, $516.45 and $640.32. The issue is whether petitioner's educational expenditures for his attendance at Yeshiva University in New York City during the years in issue are deductible. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Petitioner filed income tax returns for the years 1961, 1962, and 1963 with the district director of internal revenue, Albany, *176 New York. In all of these returns he gave his home address as Grossinger Hotel, Grossinger, New York. Petitioner attended Fordham University and Brooklyn Law School and he obtained a Bachelor of Laws degree from the latter school in June 1932 and he is presently admitted to the Bar of the State of New York. Later in 1953 petitioner took undergraduate courses in psychology at Columbia University and in 1958 and 1959 he took undergraduate courses in psychology at Brooklyn College and New York University. From September 1959 to June 1966, petitioner attended the Graduate School of Education of Yeshiva University, obtaining a Master of Science degree in General Psychology on September 15, 1960, and a Doctor of Philosophy degree in General Psychology on June 16, 1966. Petitioner has been employed since 1952 at the Grossinger Hotel in Grossinger, New York. The Grossinger Hotel is a large resort hotel in a resort area in the Catskill Mountains. The hotel was open all year but during the summer months it might have as many as fifteen hundred guests. It sometimes had convention groups as well as its regular guests and its room rates varied from $23 to $38 per day per person, depending *177 upon whether it was off-season or a holiday. The hotel was a place of entertainment and it supplied entertainment by professional entertainers such as singers and night club entertainers, and other lectures and programs 7 nights a week, as well as during the day. Petitioner's employment at the hotel was part of the daytime activity program. He was a demonstrator, teacher, and lecturer in the field of hypnosis, psychology, and relaxation and much of his program consisted of his giving hypnotic demonstrations and lectures. He was furnished a room at the hotel but his duties only required that he be at the hotel Friday, Saturday and Sunday of each week to conduct his demonstrations and lectures on those days. His work at the hotel continued substantially the same from his first employment there in 1952 through the years here in question and during school terms he journeyed to New York City on Sunday afternoons where he lived in his rented apartment and went to the schools heretofore mentioned on Monday, Tuesday, Wednesday and Thursday of each week. As previously stated, petitioner attended the Graduate School of Education of Yeshiva University in pursuit of his Doctor of Philosophy degree *178 in general psychology during the years 1961, 1962 and 1963. On his income tax returns for the years 1961, 1962 and 1963, petitioner reported salary income from the Grossinger Hotel in the respective amounts of $5,594.60, $5,415, and $5,419.60. Also, on these returns for the years 1961, 1962 and 1963, he took deductions for educational expenses in the amounts of $2,889.87, $2,508.33 and $2,630, respectively. Respondent disallowed the deductions but it is stipulated petitioner did incur and pay amounts of $2,028.90 in 1961, $1,708.33 in 1962, and $1,630 in 1963. These sums consist of about $1,200 each year as rent on the New York City apartment and lesser sums for tuition at the University, and books. After obtaining his Ph.D Degree in general psychology in June of 1966, petitioner became affiliated with the New York University Medical Center Institute for Physical Medicine and Rehabilitation as a trainee. Petitioner's duties as a trainee at the Institute for Physical Medicine and Rehabilitation for which he received $333.34 a month, include working with emotionally ill patients at the Goldwater Memorial Hospital, Welfare Island, New York, on Monday, Tuesday, Wednesday and Thursday *179 of each week. The requirements for certification as a licensed psychologist in the State of New York include a Ph.D in psychology, 2 years supervised experience in rendering psychological services, such as petitioner's present position as a trainee, and satisfactory completion of a State certification examination. Opinion Section 162(a), I.R.C. of 1954, allows "a deduction [for] all [of] the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *." Educational expenses can be deductible as a business expense by an employee when undertaken primarily for the purpose of maintaining or improving skills required in his employment or to meet the requirements of his employer and not undertaken primarily for the purpose of the employee's advancement or securing a new position or for other personal purposes of the employee. Sec. 1.162-5, Income Tax Regs., provides, in part, as follows: § 1.162-5 Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for *180 the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade *181 or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible. Respondent's determination disallowing the educational expenditure deductions is presumed to be correct and petitioner had the burden of proving that his attendance at Yeshiva University Graduate School during the years 1961, 1962 and 1963 was undertaken by him primarily for the purpose of maintaining or improving skills required in the duties he was performing at the Grossinger Hotel or to meet the express requirements or conditions of his employer in order to retain his salary, status, or position. The issue is one of fact to be determined from all of the evidence, Welsh v. United States, 329 F. 2d 145 (1964); Condit v. Commissioner, 329 F. 2d 153 (1964), affirming a Memorandum Opinion of this Court. Petitioner was well acquainted with the provisions of the quoted regulation. In each of his income tax returns for the 3 years in question when he took deductions for around half of his gross salary for educational expenditures he explained on each return that the expenses were for education primarily undertaken for maintaining and improving *182 skills required in his employment and meeting express requirements of his employer. Petitioner's position on brief is the same as indicated in the notation on his tax returns. Again he states he had two purposes in undertaking his education and he argues each was primary. He argues that the two purposes stated in the regulation, sec. 1.162-5(a)(1) and (2): maintaining or improving skills or meeting express requirements of his employer, furnished his prime motivation in pursuing his doctor's degree work at the university. Actually, the evidence here, which he argues substantiates his position, is his own testimony that he was really motivated by the above dual, primary purpose which evidence is not entitled to much more weight than the explanatory statements on the returns. Petitioner is a lecturer and he testified at great length on the subjects of hypnosis and psychology and his duties at the hotel. When he was first employed by the hotel he had had no formal education in psychology but he argues on brief that he possessed "the minimum requirements for his position when he was hired in 1952." All of the evidence shows there was no substantial change in his work at Grossingers *183 during all of the years he worked there and he was still working there at the time of trial. He gave demonstrations in the art and science of hypnosis, lectured on the psychological aspects of living, and gave lessons in the art of relaxation, sleep, and habit control. Petitioner took some undergraduate courses in psychology at Columbia University in 1953 and then, according to petitioner, some 4 years later, in December of 1957, his employer (the president of Grossinger Hotel Corporation) requested him to go back to school for 8 years and get his doctor's degree in psychology. He said he was told the hotel would be protected in some unexplained manner if guests were injured in hypnotic demonstrations if he held a doctor's degree and the hotel's reputation would be enhanced if he were called "doctor". On the subject of his motivation in returning to the university to embark on an 8-year course of study leading to his doctor's degree, he testified as follows: Q. What was your motivation while you took these courses? * * *
A. Primarily it was because I was requested by my employer to insure the safety of the guests and to protect the reputation of the Grossinger Hotel, and secondarily, *184 to improve my own skills. As time went on, improving my own skills was equally important to me as the request of my employer. I became more intensely interested in my own field. Q. And, Dr. Fleischer, your own field is what? A. Hypnosis. We are not bound to accept the taxpayer's stated primary purpose when there are so many circumstances strongly indicating the education was not undertaken primarily for such purpose and the record as a whole would support the inference that the education was undertaken primarily for another personal purpose. It strains the bounds of reasonableness if not credibility to say petitioner's education during the years in issue was undertaken by him primarily for the purpose of maintaining or improving skills required in his employment. As stated, he had no formal education in psychology when he was hired. Apparently his work was completely satisfactory. One of the officers of the hotel corporation testified petitioner always drew a good crowd at the hotel. To say that he would voluntarily spend approximately half of his rather modest salary for the principal purpose of sharpening up skills required by his employment, when he was already doing a *185 satisfactory job, is almost unbelievable. The statement that the hotel wanted him to get a doctor's degree to protect its guests is nonsense, in view of the 8 years he continued to work without such degree. Even if it be thought some psychology study could be said to be necessary to maintain or improve skills required in his employment it is to be noted that before the years here in question petitioner had received his Master of Science Degree in General Psychology. He had received this degree in September of 1960. We cannot accept his statement that his principal purpose in going on to graduate school was for the purpose of maintaining or improving skills required in the performance of his duties at the Grossinger Hotel. There is no merit at all in petitioner's argument that the record shows his education was undertaken primarily to meet his employer's requirements. If there was such a meeting as petitioner describes when he was called before the hotel corporation board in 1957, it resulted in no more than a request or suggestion to him that he return to school for his own good and also thereby help the standing of the hotel. It is a bit difficult to think it ever even resulted *186 in that suggestion, in view of the fact that the hotel was, according to the officer who testified, so completely satisfied with petitioner's work. And to think that it resulted in any sort of express requirement that he undertake 8 years of formal education at a personal cost of approximately half his salary in order to retain his job is simply not warranted by the evidence presented. The entire record strongly indicates the petitioner's principal purpose for undertaking the education was a personal purpose, such as eventually to meet the minimum requirements for qualification to practice psychology which would render the expenses for such education nondeductible as business expenses under section 1.162-5(b), Income Tax Regs. This would explain petitioner's willingness to expend such a large portion of his salary toward securing his doctor's degree as this was a necessary requirement if he was to be a licensed psychologist. It is significant that as soon as he received his doctorate he started on the next requirement or trainee work which is described in the evidence as an internship. When he completes 2 years as intern he will be qualified to take an examination *187 for a license and if he passes he can practice psychology in New York. We think it much more reasonable to infer from the record presented that petitioner's principal purpose in undertaking his education at the graduate school was to meet the requirements to become a licensed psychologist. At any rate, we hold petitioner failed to prove his principal purpose for undertaking the education during the years in question was primarily for the purpose of maintaining or improving skills required in his work or to meet the express requirements of his employer within the provisions of sec. 1.162-5(a)(1), and (2), Income Tax Regs.
Decisions will be entered for the respondent.